## REUBEN ANDERSON et al. v. CORA ANN COX.

The plaintiffs sued upon an administrator's bond which they alleged had been lost. On the trial, they offered in evidence a certified transcript of the record, which included a copy of the bond. The evidence was received without objection. It was contended they were thereby exempted from the necessity of making the proof necessary in actions upon lost instruments. *Held*: That as the clerk's certificate was made after the instrument was alleged to have been lost, it formed no proof of the instrument, and that the plaintiffs could not recover without the evidence required in actions on lost instruments.

An heir who had renounced her father's succession, is not liable in an action based upon an administrator's bond on which the father was surety. Nor is she made liable by giving her assent to a petition by the other sole joint heir, claiming the succession.

6 9
e109 219

APPEAL from the Fourth District Court of New Orleans, *Strawbridge*, J. *Stockton* and *Steele*, for plaintiffs, contended: The evidence showed that the succession of *Anderson* was never closed, no account of the administration having been homologated.

It is idle to talk of prescription in such a case: here is a *contestatio litis* pending in court, and up to this day undetermined. Even if the account were homologated, it does not pretend to account for any more than $2802 62½. But it makes no legal or satisfactory account for one dollar.

On the 14th day of July, 1841, *Mrs. Cox* and *Mrs. Slocomb*, her daughter, filed in the late Probate Court of New Orleans, in the matter of the succession of *Nathaniel Cox*, their petition; in which *Ann Barnes Cox* is styled widow of *Nathaniel Cox*, "and in community of interest in his estate." *Cora Ann Slocomb* is called the only child of *Nathaniel Cox*. "they being the universal heirs of the said *Nathaniel Cox*, and so constituted by his will,"—so says the petition.

The prayer of the petition is, that the syndic appointed to administer the estate be ordered to account; that "your petitioners may be recognized as the sole heirs to said estate, and that said *Adams* be required to account with your petitioner, *Ann Barnes Cox*, and pay over to her the whole of the money, and deliver to her the whole of the estate remaining. Your petitioner, *Cora Ann Slocomb*, assenting thereto. They pray for general relief in the premises."

"CHINN, for petitioners.

"I assent, CORA A. SLOCOMB."

On the 6th August, 1847, judgment on this petition was rendered. This judgment recites that, in consideration that it is shown that *Mrs. Cox* is the widow, and *Mrs. Slocomb* the only child of *Nathaniel Cox*, and that by his will they were constituted the universal legatees of his property "and that on the 14th July, 1841, they filed a petition in the late Court of Probates in and for the Parish of Orleans, in the above entitled suit, the said succession being under the administration of a syndic, praying to be recognized as heirs, praying also that the syndic account with the said *Mrs. Cox*, and pay over to her all the moneys then coming to said heirs, and that she be put in possession of the residue of

ANDERSON
v.
COX.

said property, the said *Mrs. Slocomb* having by public act, passed before H. B. Cenas, notary public, on the 6th day of June, 1837, renounced the said succession and her share thereof, unconditititionally and without any reservation, in favor of her mother, the said *Mrs. Cox,*" &c., it is ordered that *Ann Barnes Cox* and *Cora Ann Slocomb* be recognized as heirs of *Nathaniel Cox,* as aforesaid; "and considering the renunciation as aforesaid, it is further ordered, that the said *Ann Barnes Cox* be placed in possession of all the residue of said estate, and that the same be delivered to her." &c.

As before stated, on the 13th May, 1850, a judgment was entered against *Reuben Anderson et al.* sustaining the defendant's plea of prescription.

From this judgment the plaintiffs appealed; and assign for error, in this court, that the judgment is clearly contrary to law and evidence.    1. The heirship of plaintiffs is fully and incontrovertibly established by the depositions.    2. The matter of account is still pending and undetermined, and the estate has been wholly destroyed in the meantime; the plea of prescription is therefore so totally untenable as, in our opinion, to ·merit no comment.    3. The acceptance of the succession of *Nathaniel Cox* by *Mrs. Slocomb,* is too manifest and free from doubt to warrant any argument upon the point.    She renounced the succession by act before Cenas, 27th May, 1837; but she claimed and accepted it by her petition filed in the late probate court, on the 14th July, 1841, wherein she prays to be recognized as heir, and that her portion of the estate be delivered over to her mother, *Ann Barnes Cox.*  This is an *acceptance* of the succession, and a *transfer* of her interest in it to her mother.    4. The real estate does not appear ever to have been sold by the curator; and therefore, the security, *Cox,* is not liable for its value.

But the personal estate was sold, and it brought more than $5300; and for the price, the bondsman, *Cox,* is certainly bound, as for the value of a wasted estate.

Argument on any point raised in this case would, in our opinion, be a matter of supererogation, and it it is therefore omitted.

*E. A. Bradford* and *C. M. Emerson,* for defendant, contended : Prescription begins to run from the time when the creditor has a right to sue.    *Hernandez v. Montgomery,* 2 N. S. 432, *Andrews v. Rhodes,* 10 R. R. 23, *Gueno v. Soumastre,* 1st Ann. 44.    It runs also against a vacant estate, although no curator be appointed.    Old Code, art. 42, p. 486, New Code, art. 3492, *Dane's Heirs v. Elkins et al.* 9 L. R. 142.    *Leonard et als. v. Fluker,* 4 R. R. 150.    *Calvitt et als. v. Mulhollan,* 12 R. R. 258.

All personal actions, whatever may be their nature, except those barred by a shorter time, are prescribed by ten years, if the creditor be present, and by twenty if he beab sent.    Code, art. 3508; and in *Barrelli v. Riviere,* 3d Ann. 46, the court held this language : " *Neither the nature of the debt* nor the mode of life of the debtor can affect the rule."

Let us apply the above principles to the case at bar : The succession of *Thomas Anderson,* was opened in 1811, under the Old Code, and it was a vacant one.    It was the succession of a man of full age at the time he died ; and the plaintiffs state that their ancestor, *Andrew Anderson,* father of the deceased, through whom they claim, was the sole heir.  He must, therefore, be presumed to have been above the age of twenty-one years in 1811, when his son died.

In August, 1814, the attorney for absent heirs presented a petition, in which he prayed that the curator's bond be handed to him for suit; and an order was given by the court to that effect.

*Gray,* the curator, had failed to render his account, although more than once required to do so; and after the month of August, 1816, no further proceedings were had in the succession.    The rights of its creditors and of the heirs under the bond, had therefore matured not later than August, 1816, and suit could then have been instituted and maintained upon it.    From that time to the institution of the present suit, a period of above thirty years, prescription has been running; for in August, 1816, the heir or heirs had the same right to commence proceedings that they had in 1849.    If their right is indisputable now, it was equally so at the former date, and they must, therefore, pass under the rule which says prescription begins to run when the right to sue has accrued.

The code declares that all personal obligations, except those already provided for, are barred in ten years, &c.; and this court declares that the nature of the debt cannot affect the general rule.    With what propriety, then, can it be

argued that a curator's bond form an exception to the rule, and where is the law or principle of law which supports the argument?

Under the will of *Nathaniel Cox,* a copy of which is submitted, the defendant and her mother were made universal legatees. A short time after the death of her father, the defendant renounced his succession in due form. The effect of this renunciation is sought to be avoided, by the pretence that she afterwards accepted the inheritance; and a petition, together with the judgment thereon, in which the prayer and decree are that the defendant and her mother be recognized as heirs, and the balance of the estate handed over to the latter, is cited as proof of the fact.

A proper construction of these documents would not hold the part taken by defendant in that petition to be an acceptance. She had renounced, and that act was a complete alienation of all her rights to her co-heir, (Code 1011,) and her portion belonged and passed to the co-heir. Art. 1015. It was, perhaps, unnecessary that she should, under this state of things, have joined in the petition referred to; but, to save cavil, she assents to the prayer of the petition by simply signing her name at the foot of the petition, under the words, "I assent."

To what did she assent? Her father's estate had been wound up. The balance, after the payment of the debts, consisted in a few outstanding claims, which her mother desired to sue; but in order to authorize her, without dispute, to commence legal proceedings, she wished to be placed formally in possession; and that was the sole object of the petition. That petition cannot be deemed to be the act of defendant, without completely overlooking its design; nor can *Mr. Chinn,* who signed it as attorney, be considered as acting for her : otherwise she would not have signed it herself; but he must be considered as the attorney of her mother, for whose benefit it was presented. Under the renunciation, to which express reference is made in the petition, the defendant was entitled to no share in said balance, and no act of hers could give her any right or title to it, or make her any more or less an heir than she already was.

Her intention, therefore, in signing the petition becomes a matter of importance, and should govern in construing the act. Was it her intention to be placed in possession jointly with the co-heir, or to be recognized as heir for the purpose of receiving any benefit or incurring any liability? By no means. Her sole object was merely to confirm what she had already done by renouncing, and to show that she had no claim or title to the surplus.

We contend that this solitary act of defendant, from which she reaped and designed to reap no advantage, does not subject her. The law which renders the acceptor of a succession liable for its debts, is founded upon the principle that the assets and debts must go together, and that the one cannot be taken without the other. As in the case of partnership, he who shares the profits must share also the losses ; but this rule does not apply to the case under consideration. Here the party seeks no advantages, and is entitled to none. How, then, can the circumstance of her writing the words " I assent" at the foot of a petition, the only object and effect of which was to place another in possession, be construed as implicating her in the premises?

The plaintiffs administered no proof that the bond was lost, or that it was signed by *Mr. Cox.* The steps required by art. 2259 of the code have never been taken; but the plaintiffs believe they have surmounted every difficulty, by introducing, without objection, what purports to be a copy of the curator's bond.

At the trial below, the plaintiffs offered in evidence what they said was a transcript of the *proceedings* of the probate court in the succession of *Thomas Anderson.* It contained upwards of thirty pages, and as no sound objection could be made to the introduction of the *proceedings,* and as, on a careful examination of said proceedings and of the papers on file, made previously by defendant's counsel, neither the bond nor a copy of it was found, no exception was taken to the transcript, inasmuch as it could not be supposed to contain a copy of the bond. During the argument, defendant's counsel were surprised on hearing a supposed copy read. A reëxamination shows that the copy in question was taken from no part of the proceedings or papers on file, but from what purports to be a copy found in an old book called *Miscellaneous Records.* It is, therefore, nothing more than a copy of a copy, and was introduced without any proof of the loss or destruction of the original.

Under these circumstances, we contend that it proves nothing. But if it should be considered as proving the existence of the curator's bond, its introduc-

tion did not waive the necessity of proving *Mr. Cox's* signature, which was especially·denied in the answer.  C. P. 325.  C. C. 2241.  See also, *Norwood et al.* v. *Green et al.* 5 N. S. 176 ; and *Poydras* v. *Hiriart,* 6 N. S. 403.

The plaintiffs have favored us with no proof to show what became of the original; and for aught that appears it may have been taken up by the curator or its amount satisfied out of his estate.

The plaintiff's have never pursued the principal of the bond.  This they were bound to do before they could proceed against the surety.  Acts of 1842, sec. 6, p. 302.  *Wilson* v. *Murrell,* 6 R. R. 69.

Nearly forty years they waited before they saw fit to pursue their rights. Meantime, all of the parties originally interested have probably passed away; the succession of defendant's father has been settled, and no claim was made by plaintiffs to be placed among its creditors.  The plaintiffs have been guilty of great *laches;* and at this late day it would be of no avail to attempt to subrogate her to any rights they may have had in the premises.

The judgment of the court was pronounced by

ROST, J.  This is a suit upon a lost instrument, a curator's bond, alleged to have been signed by the father of the defendant as surety of one *J. F. Gray,* curator of the succession of *Thomas Anderson,* on the 26th September, 1811.

The defendant denied the existence of the bond, and her liability under it, if it existed.  She filed also a plea of prescription, which was sustained in the court below.  The plaintiffs have appealed.

On the trial of the cause, the plaintiffs offered in evidence a large transcript which is entered in the note of evidence as proceedings in the succession of *Thomas Anderson,* deceased.  It was received without objection from the defendant.  That transcript purports to contain a copy of the bond sued upon ; and the plaintiff's counsel insists that this copy being in evidence, it was unnecessary for him to make the proof usually required in cases of lost instruments.

The plaintiff's petition was filed on the 3d January, 1849.  They state in it that the original bond was placed, when given, among the papers of the succession of *Thomas Anderson,* but that it has since been lost or mislaid by the officers of the court ; that they have caused a diligent search to be made, but without success, and that it cannot be found.

The transcript offered in evidence is certified by the clerk to contain true copies of all the papers on file, and of all the proceedings had in the succession : it bears date the 22d day of January, 1849, nineteen days after the filing of the petition.  That certificate covers nothing more than copies of original documents and judicial proceedings on file at the time of its date.  By the plaintiffs' own showing, the bond had been lost and was not on file at that date.  It is, therefore, not authenticated by the certificate, and there is nothing in the record to show its genuineness, or to dispense the plaintiffs from making the proof required in cases of lost instruments, which the answer of the defendant rendered indispensable.

But if the bond itself was in evidence, it is clear that the defendant would not be liable under it.  By the same disposition of his will, *Mr. Cox* left his property jointly and in equal shares to his wife, *Ann Barnes,* and to his only daughter. On the 27th May, 1837, the defendant renounced the succession of her father by a notarial act in due form.  Under article 1700, C. C., her half inured to the benefit of her mother by right of accretion.  After the renunciation, she was no longer liable for the debts of *Mr. Cox,* unless she subsequently accepted the succession, notwithstanding the renunciation.  The question is, whether such an acceptance has been shown.

In 1841, a petition signed by an attorney at law was presented to the court of probates in behalf of the defendant and her mother: it alleges that they are

the sole heirs of *Mr. Cox*; and the prayer is that they may be recognized as sole heirs of his estate, and that the curator of his succession be ordered to account, and to pay over to *Mrs. Cox* the assets in his hands. At the foot of the petition these words are written, "I assent, *Cora A. Slocomb*."

Nothing was done on this petition until 1847, when the court rendered the following judgment: "It is ordered that *Ann Barnes Cox* and *Cora Ann Slocomb* be recognized as heirs of *Nathaniel Cox*; and considering the renunciation and petition as aforesaid, it is further ordered, that the said *Ann Barnes Cox* be placed in possession of all the residue of said estate, and that the same be delivered to her."

The judge bases his decree upon the renunciation of the defendant, which appears to have been in evidence before him. The object of the defendant, then, in this proceeding, so far from being to annul that renunciation was in futherance of it. Under that state of facts, it cannot be urged against her that she assumed the quality of heir, or that she was adjudged to be such. All laws must receive a reasonable intepretation. The judicial proceedings meant by article 982, C. C., are those in which the heir appears to claim as such some right in the succession. But the petition in this case contains an express disclaimer of any right. The assumption of the quality of heir by the defendant, was utterly without object, and originated in the want of legal knowledge of the counsel who drew the petition.

It is true, the judge says in his opinion, that the defendant renounced the succession in favor of her mother. But the fact is not so. Her renunciation is unconditional and absolute; and the error of the judge on this question of fact cannot affect her rights. The decretal part of the judgment recognizes her as an heir having renounced, and is based upon that renunciation. It cannot, therefore, have the effect of setting it aside.

We have tested the rights of the parties on the hypothesis that the assumtion of the quality of heir, in a judicial proceeding, after renunciation, amounts to an acceptance, and has the effect of annulling that renunciation. But we do not wish to be understood as expressing an opinion on this question. The renunciation can only be made by an authentic act, and it might be that the subsequent act of acceptance which annuls it ought to be clothed with the same formalities.

For the reasons assigned it is ordered, that the judgment in this case be affirmed, with costs.